UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RONALD BALZ, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | | 1:06-cv-1264-LJM-WTL |
| ) | | |
| MICHAEL J. ASTRUE ) | | |
| Commissioner of Social Security, ) | | |
|     Defendant. ) | | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff, Ronald Balz ("Balz"), requests review of the final decision of Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Balz's application for a period of Disability and Disability Insurance Benefits ("DIB"). The Court rules as follows:

### I. BACKGROUND

Balz was born on November 6, 1956. R. at 428. He was forty-one at the alleged disability onset date, July 1, 1999, and forty-eight years old at the time of the Administrative Law Judge's (the "ALJ") decision. R. at 16, 17. Balz is a high school graduate with past relevant work experience as a telephone lineman, delivery driver, and landlord. R. at 429-30. Since the alleged onset date, Balz has not performed substantial gainful activity. R. at 428.

On December 17, 2002, Balz filed an application for a period of Disability and Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). R. at 60-62. Balz claims he is "disabled" within the meaning of the Act under 42 U.S.C. §423 due to pain and numbness in his neck, back, and hands, and depression. R. at 17. On April 10, 2003, the Social Security Administration ("SSA") denied his application for benefits. R. at 38. Balz filed for reconsideration

on May 2, 2003. R. at 37. The SSA denied the request for reconsideration on June 19, 2003. R. at 34. Balz then filed a request for a hearing by Administrative Law Judge ("ALJ"). R. at 33. ALJ James R. Norris presided over the requested hearing on March 17, 2005. R. at 43, 426. The ALJ reached a decision on November 5, 2005, denying a period of disability and DIB under either §§216(I) or 223 of the Act. R. at 29. On June 23, 2005, the Appeals Council denied Balz's request for review of the ALJ's decision. R. at 6. The Appeals Council's denial for review effectively transformed the ALJ's decision into the final decision of the Commissioner of Social Security. *Id.*

### A. PHYSICAL LIMITATIONS

Beginning in July of 1999, Balz sought medical treatment for neck and low back pain from Michael LaRosa, M.D. ("Dr. LaRosa"), Mitesh V. Shaw, M.D. ("Dr. Shaw") and Thomas Leipzig, M.D. ("Dr. Leipzig"). R. at 150-51, 430, 436. Balz's neck and back problems began in April 1999 following an industrial accident. R. at 150, 370, 428. Following the accident, Balz received physical therapy services, which relieved his lower back pain, and he underwent three surgical operations to correct injuries to the neck. R. at 144, 146, 149, 196, 429-30.

In addition to the surgeries performed by Dr. Shaw and Dr. Leipzig, Balz also received cervica facet injections under the care of David Ratzman, M.D. ("Dr. Ratzman"), a pain physician. R. at 169-80, 310-34, 437. Seven weeks into the injection period, Balz reported overall pain reduction of 75% and was continuing to improve. R. at 169-80.

In the fall of 2002, however, Balz reported that his pain had returned to its original level. Balz has taken many different prescription pain medications since the onset of his injury and he

reports that he is currently taking Percocet which reduces his pain by approximately 50%. R. at 98, 434, 437.

In March of 2003, Balz underwent a consultative physical examination arranged by Disability Determination Services ("DDS"). R. at 25, 133-36. Mohammed Majid, M.D. ("Dr. Majid"), who specializes in internal medicine, stated there was some "voluntary posturing" during the examination of Balz's cervical spine. R. at 134. Dr. Majid found no muscle weakness, atrophy, contractures or spasm. *Id.* On examination, Dr. Majid found Balz had "good" fine-finger movements and a normal grip. Dr. Majid detected no sensory or reflex loss. *Id.* Dr. Majid concluded Balz's ability to sit, stand and walk were unimpaired, but that Balz was limited in his ability to lift or handle "heavy" objects. R. at 135.

In April of 2003, A. Landwehr, M.D. ("Dr. Landwehr"), a DDS physician, concluded Balz could do a range of light work[1] with limitations that would never allow him to climb rope, scaffolding or a ladder. R. at 116-123. L. Bastnagel, M.D./L.M.B. ("Dr. Bastnagel") reached the same conclusion two months later. R. at 123.

In October of 2004, Dr. LaRosa completed a Physical Residual Functional Capacity Assessment form in which he opined that Balz cannot do even sedentary work.[2] Dr. LaRosa found that Balz could not use his hands for continual or frequent grasping, fine manipulation or pushing

---

[1]Light work requires (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding and turning objects. R. at 25, n.6.

[2]Sedentary work requires (1) lifting and carrying ten pounds occasionally; (2) sitting or six hours during an eight-hour workday; (3) standing and/or walking for two hours during the remainder of the workday; and (4) using hands and fingers to perform repetitive fine-finger manipulation. R. at 25, n.7 (citing 20 CFR §404.1567(a); SSR 83-10).

and/or pulling arm controls. R. at 396. Dr. LaRosa also found Balz could not use his feet for continual or frequent operation of leg controls. *Id.* Dr. LaRosa stated that Balz cannot be near unprotected heights or moving machinery and must not drive automotive equipment. *Id*. He also stated that Balz needs "mild" limitations on exposure to marked changes in temperature and humidity, and to exposure to pulmonary irritants. *Id*. At that time, Dr. LaRosa stated that Balz was fully disabled due to cervical radiculopathy secondary to disc disease[3], cervical spondylosis[4] and chronic pain syndrome and that the disability would continue indefinitely. R. at 397, 399, 451.

Balz alleges that his symptom of pain limits his activities in total; that he is virtually unable to perform any activity without experiencing debilitating pain and numbness. R. at 435. Balz has described his pain in various ways since applying for disability benefits in 2002. Specifically, Balz has described intermittent knifelike pains as well as constant sharp aching pain. R. at 129, 132, 143, 169. The ALJ took note of the fact that these various descriptions were given over a period of several years. R. at 20.

### B.  PSYCHOLOGICAL LIMITATIONS

The record documents symptoms of mild depression. In December of 2001, Balz, who was not taking any medication at the time, took the Beck Depressive Inventory and scored in a range that did not show a predilection for depression. R. at 71. In March of 2003, Balz underwent a psychological examination. R. at 129. The summary and diagnostic impression of the psychological

---

[3] The pain radiates from the neck out into the nerve areas. R. at 451.

[4] Spondylosis is defined as: The stiffening or fixation of the vertebra as the result of a disease process, with fibrous or bony union across the joint. STEDMAN'S MED. DICTIONARY 409 (26th ed. 1995) ("STEDMAN'S").

examiner was that of mild depression most likely in reaction to his pain and physical limitations. R. at 132.  The psychological examiner also noted that Balz reported that he had not undergone any counseling for depression, but was treated for approximately one year with Zoloft for the condition and that he found the medication helpful.  R. at 129.  In April of 2003, a state agency psychologist reviewed this psychological record and determined Balz's depression was not a severe impairment, and that Balz had not had any deterioration from depression or more than mild limitations in his daily activities, social functioning, concentration, persistence, or pace.  R. at 102-12.

### C. BALZ'S DAILY ACTIVITIES

Balz reported in his disability claim form the following activities of daily living: cooking meals, mowing the lawn, driving, taking his children to and from their activities, reading, helping his children with homework, enjoying time with his children, and using the computer.  R. at 81-82. In June of 2001, Balz went on vacation to Disneyland.  R. at 304.  In March of 2000, nearly one year after the reported accident, Balz listed playing and running as specific activities that were troublesome to perform.  R. at 283.

### D. EXPERT TESTIMONY AT THE HEARING

On March 17, 2005, James Brooks ("Dr. Brooks"), a licensed clinical psychologist, testified as a medical expert at the ALJ hearing.  Dr. Brooks reviewed Balz's medical record and testified that he did not see enough evidence to satisfy the mental health listings.  R. at 458.

Richard Hutson, M.D. ("Dr. Hutson"), reviewed Balz's medical record and testified as a medical expert before the ALJ on March 17, 2005.  R. at 447. Dr. Hutson is board certified in

orthopedic surgery. *Id.* He testified that a diagnosis of cervical radiculopathy secondary to disk disease is generally consistent with reports of pain going down the arms. R. at 456. Dr. Hutson also testified that limiting Balz to sedentary work is appropriate given the available record. R. at 455.

The ALJ also heard testimony from Stephanie Archer ("Archer"), a certified rehabilitation counselor. R. at 426. Archer, testifying as a vocational expert, stated that Balz's job as a delivery driver was semi-skilled medium to heavy work. R. at 444, 426. Archer also testified as to the wide range of unskilled work at both the light and sedentary levels such as assemblers, numbering 4,200, machine tenders, numbering 2,400, and packer/inspectors, numbering 1,100. R. at 463.

## II. DISABILITY AND STANDARD OF REVIEW

A claimant must have a "disability" under 42 U.S.C. § 423 to be eligible for DIB. "Disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process necessary to the ALJ's determination of whether a claimant is disabled is set forth in 20 C.F.R. § 404.1520(a)(4).

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

>    4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.
>
>    5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

When applying this evaluation process, the burden of proof rests with the claimant for steps one through four. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If the claimant meets that burden, the burden then shifts to the Commissioner to prove that the claimant can perform other work given the claimant's residential functional capacity, age, education, and experiences. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act provides for judicial review of the Commissioner's denial of benefits. *See* 42 U.S.C. § 405(g). First, the Appeals Council must deny review of the ALJ's findings. The consequence of this denial is that the findings of the ALJ become that of the Commissioner. *See, e.g.*, *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the findings of the ALJ and Commissioner if such findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ and Commissioner's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ and Commissioner. *See id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III. **DISCUSSION**

#### A. THE ALJ'S FINDINGS

The ALJ in this case properly followed the five-step inquiry. At step one, the ALJ found that Balz had not engaged in substantial gainful activity since the alleged onset of the disability. R. at 18. At step two, the claimant must prove he has a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 CRF §§ 404.1520(a)(c), 404.1521(a),(b). The ALJ's step two evaluation contains consideration of the medical evidence favorable to Balz, portions of Dr. Brooks's testimony as a medical expert, as well as Balz's own testimony. R. at 18-19. The ALJ analyzed Balz's physical ability to do basic work activities separately from Balz's mental ability to do basic work activities. The ALJ found "no evidence the claimant has ever deteriorated in any setting because of mental problems" nor did he find any evidence that Balz was "incapable of adjusting to marginal changes in his environment or increased mental demands." R. at 19. The ALJ did find, however, that Balz satisfied step two based on his physical ability to do basic work activities. R. at 18. The ALJ stated, "[a]lthough the last surgery relieved him of scar tissue and all of the nerve root impingement, the effects of the operations and the remaining degenerative changes combine to significantly interfere with his [physical] ability to perform basic work activities." *Id*.

At step three, the ALJ determined none of Balz's impairments, even when considered in combination, meet or equal in severity all of the criteria of any impairment contained in Listing of Impairments ("Listings"). R. at 19. The ALJ's findings revealed that Balz's cervical problems do not satisfy section 1.02B "because he is still able to use his upper extremities to perform fine and gross movements effectively." *Id*. The ALJ also found that Balz did not meet or equal section 1.04

"because the degenerative changes along his spine do not compress any nerves, cause neurological deficits, produce arachnoiditis or result in spinal stenosis, to the degree required to satisfy the listing." *Id*. The ALJ determined Balz had the following residual functionality capacity ("RFC"):

> The claimant can perform light work that allows him to occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs, but never permits him to climb rope, scaffolding or a ladder. Alternatively, the claimant can do sedentary work that allows him to occassionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs, but never permits him to work overhead or climb rope, scaffolding or a ladder.

R. at 28.

Based on that RFC, the ALJ concluded Balz was unable to perform any of his past relevant work and therefore satisfied the fourth step. *Id.* However, at the fifth and final step, the ALJ found that Balz is able to perform a significant range of light work. *Id*. Consequently, the ALJ concluded that Balz is not disabled. R. at 29. Balz asserts that the ALJ's decision, and thus the decision of the Commissioner, is not supported by substantial evidence. Specifically, Balz presents the following issues: (1) whether the ALJ failed to properly assess Balz's impairments under the Listings; (2) whether the ALJ failed to properly incorporate Balz's PPI rating as well as medication side effects in to the RFC assessment; (3) whether the ALJ improperly analyzed Balz's complaint of pain; and (4) whether the ALJ failed to properly analyze Balz's credibility.

### B. THE ALJ'S FINDING REGARDING THE LISTING OF IMPAIRMENTS

The ALJ's finding that Balz's impairments do not meet or equal in severity all of the criteria of the impairments listed in section 1.02B or 1.04 is supported by substantial evidence. Although the ALJ specified the relevant Social Security listings, his step three analysis failed to explain what evidence he took into consideration in making his determination that Balz's impairments did not

9

meet or equal in severity all of the criteria of the impairments listed in sections 1.02B or 1.04. "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Greenwood v. Barnhart*, 433 F. Supp. 2d 915, 925 (N.D. Ill. 2006) (citing *Rice v. Barnhart*, 384 F. 3d 363, 371 (7th Cir. 2004)). "Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, . . . we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." *Rice*, 384 F.3d at 370 n.5 (comparing *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985)). In treating the ALJ's decision as a whole, this Court is able to trace the ALJ's path of reasoning. *Greenwood v. Barnhart*, 433 F. Supp. 2d at 925. The ALJ sufficiently articulated his assessment of the evidence in his step five analysis to assure this Court that he considered the important evidence when he concluded that Balz's impairments did not meet or equal in severity the relevant listings.

### C.  THE ALJ'S FINDING REGARDING BALZ'S RFC

The ALJ's finding that Balz retains the RFC to perform work at the light exertional level with several additional limitations is supported by substantial evidence. In making his determination, the ALJ relied on statements and reports from Balz and others, including all treating and examining physicians, psychiatrists, and psychologists, regarding Balz's medical history, diagnoses, treatment and efforts to work. R. at 20-28. This approach is consistent with 20 CFR § 404.1529(c)(3) and Social Security Ruling 96-7p. After reviewing the evidence offered, the ALJ adopted the DDS doctor's recommended RFC and rejected the treating physician's opinion regarding Balz's

10

functioning. R. at 26. Under the regulations, state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. §404.1527(f)(2). Thus, the opinions of Drs. Landwehr and Majid provide substantial evidence in support of the ALJ decision. The ALJ stated, "[a]lthough a treating physician's opinion is entitled to deference when supported by the objective medical evidence and is not inconsistent with substantial other evidence . . ., [Dr. LaRosa's opinion] fulfills neither requirement." R. at 26. The ALJ's reliance on DDS physicians' findings is entirely consistent with the findings of the other various specialists who examined Balz in consultation.

In arriving at his conclusion regarding Balz's RFC, the ALJ considered Balz's whole permanent partial impairment ("PPI") at 12% along with other medical and non-medical evidence. R. at 23. The ALJ specifically noted Balz's PPI and the pain he reported experiencing while sitting, standing, and walking. After reviewing the evidence in its entirety, however, the ALJ found no support in the record for the limitations on sitting, standing, and walking imposed by Dr. LaRosa's submitted opinion regarding Balz's ability to function. *Id*. He noted, among other things, that Balz has not complained of problems in any of these areas during treatment and that Drs. Shah and Leipzig found that Balz walked normally. R. at 308, 336. Moreover, Drs. Majid, Landwehr, Bastnagel, Shah, Leipzig, Miller, and Hutson all agreed that the limitations imposed by Dr. LaRosa were not consistent either with their own findings or the objective medical evidence in this case. R. at 23-27, 454-55. Thus, the ALJ's minimal reliance on Dr. LaRosa's assessments was justified.

In arriving at his conclusion regarding Balz's RFC, the ALJ also considered Balz's credibility. R. at 20. Throughout the ALJ's decision, Balz's pain is considered in regard to both the nature and the intensity. R. at 18, 20-28. The ALJ noted Balz's testimony where Balz stated he had

to quit work because of his neck and back pain. R. at 19-28. He noted among other things, that Balz reported having pain, numbness, tingling and weakness in his upper and lower extremities. R. at 21. The ALJ concluded that the objective medical evidence did not support Balz's allegations. R. at 25-26. The ALJ stated that an exam conducted in March of 2003 revealed no muscle weakness, atrophy, contractures, or spasm, nor was there any detection of sensory or reflex loss. R. at 25.

The ALJ also considered non-medical evidence in support of his credibility determination. R. at 26. When Balz filed his application for DIB, he stated that he had been disabled since July 1, 1999, and was unable to perform substantial gainful activity ("SGA"). R. at 17. The ALJ noted, however, that Balz's daily activities are not significantly limited: he cares for his children, prepares meals, cleans house, works in the lawn, launders and he is able to drive. R. at 19, 75-85. The ALJ also noted that there is no documentation of general complaints from Balz regarding problems with sitting, standing or walking. R. at 25. Balz testified that he suffered from depression due to his physical pain. R. at 445-46. But, the ALJ noted that Balz has never sought counseling for depression and that the alleged depression has had no effect on his daily living activities. R. at 18-19. "[A]n ALJ's credibility determination will not be disturbed unless it is patently wrong." *Diaz*, 55 F.3d at 308. On this record, the Court can only conclude that in determining Balz's credibility, the ALJ committed no wrong.

### D. THE ALJ'S FINDING REGARDING BALZ'S ABILITY TO PERFORM OTHER WORK

Finally, the ALJ's finding that Balz has the RFC to perform a significant range of light work is supported by substantial evidence. The ALJ asked Archer whether jobs exist in the national

economy for an individual of Balz's age, education, past relevant work experience, and the exertional and non-exertional limitations noted in the RFC assessment completed by DDS physicians. R. at 463. Archer reported that the hypothetical person would be capable of making a vocational adjustment to other work, specifically the following light, unskilled jobs in the nation: assemblers, machine tenders, packer/inspectors. *Id.* Because the ALJ's hypothetical question was complete with all of Balz's exertional limitations, Archer's response provides a reliable assessment of Balz's RFC and the jobs that would be appropriate for him. *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992).

The Court finds that the record contains "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz*, 55 F.3d at 305 (quoting *Richardson*, 402 U.S. at 401. Therefore, the ALJ's decision is supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**. Final judgment shall be entered accordingly.

IT IS SO ORDERED this 5th day of October, 2007.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov